LYCOMING FIRE INS. CO. (LEONARD v.). See Case No. 8,258.

LYCOMING FIRE INS. CO. (WEEKS v.). See Case No. 17,353.

LYCOMING INS. CO. (JAMES v.). See Case No. 7,182.

## Case No. 8,614.

### The LYDIA.

[4 Ben. 523.] [1]

District Court, S. D. New York. Feb., 1871.[2]

COLLISION IN NEW YORK HARBOR—FOG—VESSEL AT ANCHOR AND FERRY-BOAT—MUTUAL FAULT—ARTICLE 20.

1. A sloop lying at anchor in the Hudson river off 51st street, was run into, in a fog, just before daylight, by a ferry-boat coming from Weehawken, and trying to make the ferry slip at 42d street. The tide was ebb. The sloop was well inside of the usual track of the ferryboat, she had no watch on deck, and gave no signal to the ferry-boat, as the latter approached, blowing her whistle: *Held*, that there was faulty navigation on the part of the ferryboat, in being so far out of her course.

[Cited in The Drew, 35 Fed. 792.]

2. The absence of a watch on the sloop, was the neglect of a precaution required by article 20 of the rules for avoiding collisions.

[Cited in The Clara, Case No. 2,787, 102 U. S. 203; The Erastus Corning, 25 Fed. 574; Hadden v. The J. H. Rutter, 35 Fed. 366.]

3. Both vessels were, therefore, in fault.

In admiralty.

D. McMahon, for libelant.

W. R. Beebe and J. A. Balestier, for claimant.

BLATCHFORD, District Judge. On the morning of the 10th of December, 1869, just before daylight, the sloop N. Cobb, belonging to the libellant, while lying at anchor in the Hudson river off the foot of 51st street, with her bow up the river, was struck on her port side and sunk by the steam ferry-boat

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 8,615.]

Lydia, a side-wheel boat plying on the ferry between Weehawken, in New Jersey, and a slip at the foot of 42d street, on the Hudson river, in New York, and then on a trip from Weehawken to New York. There was a very dense fog at the time. There is considerable conflict of testimony as to the distance at which the sloop was anchored from the shore. But, whatever that distance was, she was anchored at a point considerably inside of the range up and down the river of the pier at the foot of 47th street, outside of which was the usual course of the ferry-boat on her way to her slip at the foot of 42d street. The ferry-boat was, therefore, very far out of her usual course, when she struck the sloop. She was out of such course because she was blindly pursuing her way in the fog. If she had not struck the sloop, she would, according to the testimony, have run herself on the shore, near the foot of 51st street. From the time she left Weehawken, she had had no guide whatever, by sight or sound, to indicate to her where her slip was, or where the New York shore was. There was a strong ebb tide running, and she was moving with it. I cannot resist the conclusion, that there was bad management on the part of the ferryboat, in holding on too long upon a course towards the New York shore, with the tide and her own speed such as they were, so that she was carried a considerable distance to the northward and eastward of the west end of the 47th street pier, when her proper course was to the southward and westward of it. But the sloop was also in fault. Waiving the question as to whether she had a light burning in her rigging at the time of the collision, which is very doubtful, and the question as to whether she was anchored in a roadstead or a fairway, within the meaning of article 7 of the regulations, so as to require her to exhibit a white light, and the question as to whether she was within the requirement of subdivision three of article 10, as to the use of a bell by a vessel not under way during a fog, there can be no doubt that she was anchored in such a position as to have made it a proper precaution for her to have had some person on her deck, in so dense a fog, to indicate, by making a noise by means of a bell, or a horn, or shouting, or otherwise, her position in the water, on the approach of the ferry-boat. It is shown, that the ferry-boat blew her whistle constantly, and the sound of her paddle wheels was audible. It was well known to those on board of the sloop, that the ferryboat was in the habit of running on that ferry in such a fog as then prevailed, and that the sloop was in a place where she could be struck by a moving vessel. Yet her crew were all below. Her neglect to have some one on deck to make a noise, which the ferry-boat on her approach could hear, must be regarded as being, within article 20 of the regulations, the neglect of a precaution required by the special circumstances of the

case, and a neglect from the consequences of which, as it contributed to the collision, she is not exonerated. It results, that there must be a decree apportioning the damages equally between the two vessels.

[On appeal the circuit court affirmed this decision. See Case No. 8,615.]